UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Julie Heimeshoff,<br>    *Plaintiff,*<br><br>        *v.*<br><br>Hartford Life & Accident Insurance Co. and<br>Wal–Mart Stores Inc.,<br>    *Defendants.* | Civil No. 3:10cv1813 (JBA)<br><br><br><br>January 16, 2012 |

RULING ON DEFENDANTS' MOTION TO DISMISS

On November 18, 2010, Plaintiff Julie Heimeshoff filed a Complaint against Defendants Hartford Life and Accident Insurance Company ("Hartford") and Wal–Mart Stores, Inc. ("Wal–Mart"), claiming Defendants violated the provisions of the Employee Retirement Income Security Act ("ERISA") by failing to provide long–term disability benefits to which she was entitled under the employee benefit plan issued by Defendants. Defendants move [Doc. # 29] to dismiss the Complaint, arguing that it is time–barred under the terms of the employee benefit plan. For the reasons that follow, Defendants' motion to dismiss will be granted.

I.   Factual Background

   A.   Plaintiff's Allegations

Ms. Heimeshoff alleges as follows in her Complaint. She worked for Wal–Mart from April 29, 1986 to June 8, 2005, holding the position of Senior Public Relations Manager at the time she left Wal–Mart. (Compl. [Doc. # 1] ¶¶ 11, 15.) During her time at Wal–Mart, she became eligible for its Group Long Term Disability Plan for Employees ("Plan"), administered by Hartford. (*Id.* ¶¶ 6, 12.) In January 2005, she began suffering from pain and fatigue due to fibromyalgia; she also suffered from chronic pain, "likely Irritable Bowel

Syndrome and possible Restless Leg Syndrome, Allergies, and strong past history of lupus," and in May 2005 her "pain, fatigue, and other disabling symptoms increased." (*Id.* ¶¶ 13–14.) Ms. Heimeshoff "tried to continue working despite her medical conditions," but "due to her significant pain, extreme fatigue, and cognitive impairment, she had to stop working on or about June 8, 2005," and has since been unable to sustain full–time employment due to her conditions. (*Id.* ¶¶ 15–16.)

Ms. Heimeshoff further alleges that she meets the definition of "total disability" contained in the Plan, which reads:

> Total Disability or Totally Disabled means You are prevented from performing the Essential Duties of:
> 1) Your Occupation or a Reasonable Alternative Job offered to You by the Employer during the Elimination Period and for the 12 months following the Elimination Period, and as a result Your Current Monthly Earnings are less than 20% of Your Pre–disability Earnings; and
> 2) after that, Any Occupation

(*Id.* ¶¶ 18–20.) Hartford sent her a letter dated August 19, 2005 which stated: "Our records indicate that your disability may extend beyond the 90 day Salary Continuation period. In order to determine your eligibility for Long Term Disability (LTD) benefits, please complete and return the enclosed Group Claim forms." (*Id.* ¶ 21.) On August 22, 2005, Ms. Heimeshoff filed a claim for LTD benefits with Hartford, "listing extreme fatigue, significant pain, and difficulty in concentration," and supported by an Attending Physician Statement by her rheumatologist, Dr. Michael Saitta, with a diagnosis of Systemic Lupus Erythematosis ("SLE") and fibromyalgia. (*Id.* ¶¶ 22–23.)

On November 29, 2005, Hartford notified Mr. Heimeshoff via letter that it had not received a response from Dr. Saitta regarding her functionality, that it therefore could not

make a claim determination, but that if it received that information it expected to make a claim decision within 30 days.  (*Id.* ¶¶ 26–27.)  By letter dated December 8, 2005, Hartford denied Ms. Heimeshoff's claim for LTD benefits for failure to "provide satisfactory Proof of Loss," citing a lack of response from Dr. Saitta and advising her that if she "would like this information considered, we must receive it as soon as possible."  (*Id.* ¶ 28.)  Ms. Heimeshoff obtained counsel in May 2006 "to assist her in acquiring the 'satisfactory Proof of Loss' the Hartford was requesting," and was informed by Hartford "that no formal appeal was necessary and that if Hartford received clarification of Ms. Heimeshoff's functionality, they would re–open the claim."  (*Id.* ¶¶ 29–30.)

Ms. Heimeshoff underwent "a two–day Performance–Based Physical Capacity Evaluation ("PCE") on July 18 and 19, 2006" to provide Hartford with the requested functionality information, after which Dr. Becker concluded that "[t]he deficits identified in the objective testing and physiological screening shows application barriers which will negatively [a]ffect vocational options, avocational interests, and options undertaken in quality of life functions."  (*Id.* ¶ 32.)  Dr. Becker further concluded: "The physiological profiles show that the examinee should be considered work intolerant.  The physiological response shows that competitive and predictable sustained work is absent for all levels of category according to the Dictionary of Occupational Titles."  (*Id.*)  On October 2, 2006, Ms. Heimeshoff's counsel forwarded Dr. Becker's PCE to Hartford, along with a report from her primary treating physician, Dr. Stephen Goss, confirming her disability.  (*Id.* ¶¶ 34–35.)

Hartford retained Dr. Norman Bress, a rheumatology consultant, who reviewed the PCE and spoke with Dr. Saitta, and issued a report on November 20, 2006 concluding that Ms. Heimeshoff "was able to perform the activities of her sedentary occupation."  (*Id.*

3

¶¶ 36–38.) On November 29, 2006, Hartford denied Ms. Heimeshoff's claim. (*Id.* ¶ 39.) On September 26, 2007, she appealed the denial, relying on the conclusions of Drs. Becker, Goss, and Saitta, along with a Cardiopulmonary Exercise Evaluation by Dr. VanNess and a neuropsychological evaluation by Dr. Sheila Bastien. (*Id.* ¶¶ 40–44.) Dr. Tanya Lumpkins, retained by Hartford, concluded after reviewing her records, that "[t]here is no support in the records that the claimant would not tolerate, with adequate effort and training, a work hardening program to improve conditioning, and thereby work capacity." (*Id.* ¶ 45.) Dr. Alexander Chervinsky, also retained by Hartford, concluded that "[i]nfluences of medication, emotional problems, or motivation for secondary gain may account for the findings." (*Id.* ¶ 46.)

Ms. Heimeshoff alleges that Hartford issued "its last and final denial letter" on November 26, 2007. (*Id.* ¶ 47.)

B.     Plan Deadlines

Under the Plan, if a claim is approved, benefits become payable after an Elimination Period—the period an employee must be totally disabled before benefits become payable—of 90 days, or the end of Wal–Mart's salary continuation payments, whichever is longer. (Policy, Ex. A to Begos Decl. [Doc. # 28] at 000011–13.) The Plan policy also requires that "[w]ritten proof of loss must be sent to The Hartford within 90 days after the start of the period for which The Hartford owes payment. After that, The Hartford may require further written proof that you are still Disabled." (*Id.* at 000027.) The Plan policy also provides that "[l]egal action cannot be taken against The Hartford . . . after the shortest period allowed by the laws of the state where the policy is delivered. This is 3 years after the time written proof of loss is required to be furnished according to the terms of the policy." (*Id.* at 000029.)

II.     Applicable Legal Standard

Plaintiff argues that because Defendants raise an affirmative statute of limitations defense in their motion and rely on materials outside the Complaint—the Plan policy and the Administrative Record of Ms. Heimeshoff's claim for benefits—the Court should treat Defendants' motion to dismiss as a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.  (Opp'n [Doc. # 30] at 13–15.)  Defendants argue that because Ms. Heimeshoff expressly incorporates the Plan policy and the claim file into her Complaint, the Court may therefore consider these written instruments in deciding the motion to dismiss without treating the motion as a motion for summary judgment.  (Reply [Doc. # 37] at 1–2.)

Federal Rule of Civil Procedure 12(d) provides: "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  However, pursuant to Rule 10(c),[1] a complaint "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."  *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).  Accordingly, "[i]n determining the adequacy of the complaint, the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint."  *Subaru Distrib. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005).  In ruling on a Rule 12(b)(6) motion, the Court may consider materials incorporated by reference and integral to a

---

[1] Rule 10(c) reads: "A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion.  A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."

complaint notwithstanding the Rule 12 conversion requirement. *Global Network Commc'n, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006) (citing *Cortec*, 949 F.2d at 47–48).

Plaintiff's Complaint expressly incorporates the documents relied on by Defendants in their motion to dismiss, stating: "Ms. Heimeshoff incorporates the entirety of the claim file Hartford produced in connection with her claim for long–term disability benefits as if annexed hereto." (Compl. ¶ 5 n.1.) Throughout her Complaint, Ms. Heimeshoff cites to portions of the Plan policy and the administrative record. (*See id.* ¶¶ 11–15, 18, 21–33, 35–47.) The Plan policy incorporated and cited by Ms. Heimeshoff in her Complaint includes the limitations period upon which Defendants rely (*see* Policy at 000029) and she includes in her Complaint the dates relevant to Defendants untimeliness argument, including the date from which she was unable to work, June 8, 2005 (Compl. ¶ 15)and the date from which she demanded benefits, June 7, 2005 (*id.* ¶ 81). The Court will therefore consider Defendants' untimeliness argument on their motion to dismiss, will consider the Plan policy and claim record expressly incorporated in Complaint, and will not convert Defendants' motion to dismiss into a motion for summary judgment.

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Kuck v. Danaher*, 600 F.3d 159, 162–63 (2d Cir. 2010). A complaint will not survive a motion to dismiss if it relies on "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," or if "the well–pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 129 S. Ct. at 1949–50.

III.   Discussion

Defendants argue that Plaintiff's action is time–barred by the three–year limitations period set out in the Plan policy. In her Opposition, Ms. Heimeshoff argues that her action is not time–barred because the Plan policy is ambiguous with respect to when proof of loss is actually due, because Hartford did not provide notice of the three–year limitations period in its denial of her claim, and because the Plan SPD was misleading.

ERISA does not prescribe a limitations period for actions under 29 U.S.C. § 1132, "[t]herefore the applicable limitations period is that specific in the most nearly analogous state limitations statute." *Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan*, 572 F.3d 76, 78 (2d Cir. 2009). Under Connecticut law, insurance carriers may contract for a limitations period in which a claim may be filed, as long as that period is not less than one year. *Voris v. Middlesex Mut. Assurance Co.*, 297 Conn. 589, 596 (2010); *see also* Conn. Gen. Stat. § 38a-290. A limitations period that begins to run before a claimant may bring legal action is enforceable. *Burke*, 572 F.3d at 79–81 (upholding three–year limitations period in insurance contract that prohibited claimant from bringing legal action "more than three years after the time written Proof of Loss is required to be furnished").

The Plan policy here states that "[l]egal action cannot be taken against The Hartford . . . 3 years after the time written proof of loss is required to be furnished according to the terms of the policy." (Policy at 000029.) The policy also states that proof of loss "must be sent to The Hartford within 90 days after the start of the period for which The Hartford owes payment." (*Id.* at 000027.) Ms. Heimeshoff argues that this provision is ambiguous because it continues: "If proof is not given by the time it is due, it will not affect the claim if: (1) it was not possible to give proof within the required time; and (2) proof is given as soon as possible;

7

but (3) not later than 1 year after it is due, unless you are not legally competent." (*Id.*)  In her Complaint, Ms. Heimeshoff claims that she was unable to perform the essential duties of her occupation as of June 6, 2005 (Compl. ¶ 19), is entitled to long–term disability benefits from June 7, 2005 (*id.* ¶ 81), and had to stop working on June 8, 2005 (*id.* ¶ 15).  Therefore, according to the Complaint, at the latest, the period for which Hartford would have owed payment began on June 8, 2005, and written proof of loss would have been due on September 6, 2005 at the latest.

Ms. Heimeshoff's counsel contended at oral argument, however, that this could not have been the due date for written proof of loss, because Hartford requested, and Ms. Heimeshoff provided, additional information regarding her medical condition and loss throughout the claim and appeal process.  The administrative record reflects that in preparing her appeal, Ms. Heimehoff's counsel requested by letter dated May 24, 2007 that Hartford "provide until September 30, 2007 to submit additional materials." (Admin. R., Ex. B to Begos Decl. at 000095.)  The Appeal Unit at Hartford responded on June 5, 2007: "[W]e will grant an extension ending on September 30, 2007.  If we do not receive additional information by that time, we will evaluate your appeal using the information currently in your file." (*id.* at 000096.)  Even if, as Ms. Heimeshoff argues, the Plan policy is ambiguous given her additional submissions throughout the claim and appeal process, pursuant to the June 5 letter from Hartford, written proof of loss was due, at the latest, on September 30, 2007.

The Plan unambiguously disallows legal action more than three years after the time written proof of loss is required to be furnished.  (*See* Policy at 000029.)  Therefore, even crediting Ms. Heimeshoff's argument regarding the uncertainty of written loss due dates, she

8

could not take legal action any later than September 30, 2010. She filed her Complaint on November 18, 2010, and it is therefore untimely under the terms of the Plan policy.

Ms. Heimeshoff nevertheless argues that this case is not time–barred because Hartford did not include in its denial letter notice of the limitations period as required by ERISA. Ms. Heimeshoff relies entirely on the Southern District of New York's decision in *Novick v. Metropolitan Life Insurance Co.*, 764 F. Supp. 2d 653 (2011), which she claims stands for the proposition that "an initial adverse determination letter must state the limitations period for judicial review imposed by an SPD." (Opp'n at 22.)

In *Novick*, after initially approving plaintiff Karen Novick's short–term disability benefits due to her lyme disease symptoms, defendant Metropolitan Life Insurance Company terminated those benefits and denied her long–term benefits claim in a letter that informed her that she could appeal the termination internally, and if her appeal were denied, she could bring a civil action. 764 F. Supp. 2d at 656–57. "The letter did not mention any limitations period for bringing that action." *Id.* at 657. Metropolitan later denied her appeal in a letter, which "[l]ike the initial termination letter, . . . did not mention any time limits applicable to any civil action." *Id.* at 658. The court found that in failing to state the limitations period applicable to any civil action in the initial termination letter, Metropolitan violated the Department of Labor's regulations governing ERISA, and therefore the six–year limitations period under New York law, rather than the limitations period in the SPD, which was 6 months following the issuance of the final written decision on appeal, applied to Plaintiff's action. *Id.* at 664. It interpreted the DOL's regulation governing ERISA claim procedures at 29 C.F.R. § 2560.503–1(g)(1)(iv)—which requires that notification of adverse benefit determination contain "[a] description of the plan's review procedures and the time

9

limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review"—to include within the "review procedures" for which time limits must be described any civil action initiated after the appeal. *Id.* at 660–662.

*Novick*'s outcome notwithstanding, 29 C.F.R. § 2560.503–1(g)(1)(iv) unambiguously requires that the notification of benefit determination include "a statement of the claimant's *right* to bring a civil action," whereas its description of the necessary notification for claim review procedures requires "[a] description of the plan's review procedures and the time limits applicable to such procedures." That the regulation requires notification of time limits for plan review procedures but says nothing about time limits with respect to civil actions suggests that the DOL did not intend to require such a time limit notification in the benefit determination. The court in *Novick* found that because the limitations period for seeking judicial review "is established by the plan itself, and not by law, judicial review must be a part of and governed by *the plan's* review procedures," 764 F. Supp. 2d at 661 (emphasis in original); however, while the time period for commencing a civil action is established by the plan, the judicial review process itself is not subject to the plan. A civil action seeking remedies under the plan is a separate and distinct review process from those contemplated in the claim proceedings under a benefits plan.

The court in *Novick* also relies on *Chappel v. Laboratory Corp. of America*, 232 F.3d 719, 726–27 (9th Cir. 2000), in which the Ninth Circuit held that post–denial arbitration of ERISA claims was a part of the claims procedure, and that therefore benefits denials letters would have to include time limits applicable to the arbitration. Arbitration is a different review process than a civil action in a district court, however, and particularly given the

10

requirement in the DOL regulation that states only a statement of the claimant's right to a civil action must be included in the denial letter, it is unclear how this bears on the limitations period for a civil action. The Court therefore declines to follow *Novick*. Hartford was not required to inform Ms. Heimeshoff of the Plan's limitations period for legal action in its benefits determination letter, thus its failure to do so does not affect the untimeliness of Ms. Heimeshoff's Complaint.

IV.     Conclusion

For the reasons stated above, Defendants' motion [Doc. # 29] to dismiss is GRANTED. The Clerk is directed to close this case.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 16th day of January, 2012.